## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LAKISHA HAMPTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 246 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| MIDLAND CREDIT MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The Court awards Plaintiff Lakisha Hampton $5,485.76 in attorneys' fees and $364.75 in costs, a total of $5,850.51, pursuant to her acceptance of an offer of judgment from Defendant Midland Credit Management, Inc. See Statement for details.

## STATEMENT

Plaintiff Lakisha Hampton sued Defendant Midland Credit Management, Inc. ("Midland") for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by falsely reporting to credit bureaus that Hampton's debt was not disputed, which resulted in damage to Hampton's credit. Hampton also alleged violations of the Illinois Collection Agency Act, 225 Ill. Comp. Stat. 425/9(a), and the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/1 *et. seq.* On April 12, 2022, Hampton accepted Midland's March 29, 2022 offer of judgment for $1,001.00. Midland's offer of judgment indicated that Midland would pay Hampton's reasonable attorneys' fees and costs—as either agreed upon by the parties or determined by the Court. *See* Doc. 20. The parties could not agree on Hampton's attorneys' fees and costs, so Hampton now seeks a determination from the Court that she is entitled to $7,876 in attorneys' fees and $364.75 in costs. Midland accepts Hampton's costs but challenges her requested attorneys' fees.

The FDCPA mandates attorneys' fees and costs in a successful action brought by a plaintiff. 15 U.S.C. § 1692k(a)(3) ("Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable . . . in the case of any successful action to enforce the foregoing liability [for] the costs of the action, together with a reasonable attorney's fee as determined by the court."). This includes stipulations to judgment. *See Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997) (concluding that "[t]he plaintiffs have brought a 'successful action' under the FDCPA and thus are entitled to a 'reasonable attorney's fee'" where the parties submitted a stipulation for entry of judgment against the defendants (citing 15 U.S.C. § 1692k(a)(3)). In deciding the reasonable award of attorneys' fees, the Court begins by calculating the lodestar amount. *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). The Court determines the lodestar

amount by multiplying the hours reasonably expended by the plaintiff's attorneys by their reasonable hourly rates. *Id.* The Court may then adjust the lodestar amount depending on a variety of factors, including the degree of success, the novelty and difficulty of the issues, awards in similar cases, and the relationship between the lodestar amount and the damages awarded. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 434 (1983).

## I.    Attorney Billing Rates

For the work of her attorney Bryan Thompson, Hampton seeks an hourly rate of $440. Midland challenges the requested hourly rate, arguing that Hampton has not provided sufficient support. "A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014); *Farooq v. Portfolio Recovery, LLC*, No. 15 C 6106, 2016 WL 2909650, at *2 (N.D. Ill. May 19, 2016). "The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Montanez*, 755 F.3d at 553; *Stockman v. Glob. Credit & Collection Corp.*, No. 14 C 6862, 2015 WL 4999851, at *2 (N.D. Ill. Aug. 21, 2015). "The fee applicant bears the burden of 'producing satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). If the fee applicant does not satisfy its evidentiary burden, then "the district court can independently determine the appropriate rate." *Montanez*, 755 F.3d at 553.

In support of Hampton's requested hourly rate for Thompson, she presents Thompson's affidavit, which explains his experience and work history. However, this affidavit alone does not establish the market rates. *See Harper v. City of Chi. Heights*, 223 F.3d 593, 604 (7th Cir. 2000) ("[A]n attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services[.]"). Hampton also needs "affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work" or "evidence of fee awards the attorney has received in similar cases." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 556 (7th Cir. 1999). Hampton has not submitted affidavits from any other attorneys. Therefore, the Court examines Thompson's affidavit to determine the appropriate hourly rate, also taking into consideration rates awarded in similar cases. *See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1312 (7th Cir. 1996) ("[R]ates awarded in similar cases are clearly evidence of an attorney's market rate.").

Hampton requests $440 per hour for Thompson's work, with Thompson stating that his clients have paid that rate for local counsel work and that it is his current hourly rate for federal court. However, Thompson has only submitted evidence that he billed that amount in one other matter, a multi-district litigation regarding violations of various federal and state privacy and consumer protection laws against TikTok Inc. *In Re TikTok Inc., Consumer Privacy Litig.*, 565

---

[1] Thompson incorporates the Laffey Matrix into his affidavit, but the Seventh Circuit has "expressed some skepticism about applying the Laffey Matrix outside Washington, D.C.[,]" *Montanez*, 755 F.3d at 554, and Hampton has not met her burden to show that those rates are reasonable for a FDCPA case. Therefore, the Court does not consider the Laffey Matrix in its determination of Thompson's appropriate hourly rate.

F. Supp. 3d 1076 (N.D. Ill. 2021). Thompson has not submitted evidence that he or other attorneys bill this amount for FDCPA cases. *See Paz v. Portfolio Recovery Assocs., LLC*, No. 15 CV 5073, 2018 WL 4520221, at *2 (N.D. Ill. May 17, 2018) (declining to credit client invoices that did not reflect work done for cases brough under the FDCPA), *report and recommendation adopted*, No. 1:15-CV-05073, 2019 WL 3526837 (N.D. Ill. Feb. 6, 2019). In other FDCPA cases, judges have awarded Thompson a range between $300 and $340. *See id.* at *3 (collecting cases wherein judges awarded an hourly rate of $300 and awarding the same); *Wigsmoen v. Mandarich Law Group, LLP*, No. 17-cv-7154, Doc. 27 (N.D. Ill. April 23, 2018) (awarding $340 where opposing party did not contest reasonableness of rate). And Thompson does not provide any justification for a $140 or $100 increase over the rate awarded four and a half years ago. Taking into consideration Thompson's declaration and exhibits, in addition to prior decisions on Thompson's appropriate rate and the complexity of this case, the Court will use the $300 rate awarded to him in *Paz*—which was the last contested hourly rate of which the Court is aware, *see Paz*, 2018 WL 4520221, at *2 (declining to award higher hourly rate awarded by another judge in part because requested rate was not contested)—and adjust for inflation as of September 2022, resulting in an hourly rate of $353.92. *See CPI Inflation Calculator*, Bureau of Labor Statistics, *available at* https://www.bls.gov/data/inflation_calculator.htm (last accessed November 1, 2022); *see also Fox ex rel. Fox v. Barnes*, No. 09 C 5453, 2013 WL 4401802, at *3 (N.D. Ill. Aug. 15, 2013) (awarding, in civil rights case, higher hourly rate than rate obtained three years prior because of inflation and increasing skill and reputation of attorney).

## II.    Reasonable Hours

Midland also challenges the reasonableness of the hours that Hampton's attorney expended on her case. Hampton "bears the burden of proving the reasonableness of the hours worked," and the Court must exclude from the lodestar hours that are not reasonably expended. *Spegon*, 175 F.3d at 550. Hampton must exercise "billing judgment" and winnow down hours actually expended to those reasonably expended, and she must exclude "excessive, redundant, or otherwise unnecessary" hours. *Id.* at 552.

Midland first challenges hours Hampton's attorney spent on administrative and clerical tasks. Hampton cannot recover time spent by her attorney on "tasks that would normally not be billed to a paying client" or "on tasks that are easily delegable to non-professional assistance." *Id.* at 553 (quoting *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995)). Therefore, time attorneys spent "organizing file folders, preparing document[s], copying documents, assembling filings, electronically filing documents, sending materials, docketing or 'logging' case events into an internal case tracking system, and telephoning court reporters" is not compensable. *Delgado v. Vill. of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *2 (N.D. Ill. Oct. 31, 2006) (citations omitted). The Court deducts all time billed solely to administrative tasks. *See* Doc. 25-1 at 2 (entry from December 22, 2021, reflecting "receive affidavit of service back from process server, file on EfileIL"); *id.* at 3 (entry from February 17, 2022, reflecting filing documents on CM/ECF); *see also Sommerfield v. Knasiak*, No. 08-CV-3025, 2021 WL 5795303, at *14 (N.D. Ill. Dec. 7, 2021) ("A client would not pay a lawyer's hourly rate for administrative tasks such as filing documents[.]"), *appeal dismissed*, No. 22-1100, 2022 WL 3048228 (7th Cir. June 16, 2022). In some cases, compensable tasks are block-billed with noncompensable tasks; for example, Thompson has combined time spent reviewing court filings with calendaring dates. *See* Doc. 25-1 at 3 (entry from February 25, 2022). The Court deducts

3

0.1 hours from each such combined entry for time spent on administrative tasks, accounting for those that Hampton reduced prior to filing filing this motion. *See, e.g.*, *id.* at 2–4 (entries from December 8, 2021; December 9, 2021; January 20, 2022; January 24, 2022; February 23, 2022; February 25, 2022; April 12, 2022; May 4, 2022; May 10, 2022; and June 10, 2022); *see also Gray v. Midland Funding, LLC*, 447 F. Supp. 3d 724, 726 (N.D. Ill. 2019) ("[T]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011))). Having reviewed the records, the Court reduces Thompson's hours by 1.6 for noncompensable administrative tasks.

Midland also asks the Court to reduce by at least half the hours Thompson spent drafting and filing Hampton's complaint. Midland argues that these hours are duplicative because Thompson has filed seven other nearly identical lawsuits and therefore did not need to spend as much time on this complaint. Thompson billed 2.7 hours related to Hampton's complaint—1.3 hours to "begin reviewing documents, drafting complaint" and 1.4 hours to "finalize drafting complaint, exhibits, civil cover sheet, file on EfileIL." Doc. 25-1 at 2. Hampton argues that this time is reasonable because, even though Thompson used previous work product to reduce his time spent on the complaint, drafting this complaint still required "substantial work," including "discussing the facts with the client, compiling, reviewing, and redacting exhibits, ensuring case law is current and the facts are properly pled, and drafting the other additional documentation such a civil cover sheet and filing." Doc. 31 at 5. However, Thompson did not bill any time for communications with his client and at least some of the tasks he did bill for are administrative in nature. *See Sommerfield*, 2021 WL 5795303, at *14 (collecting cases which show that "[r]ecognizing that preparing a civil cover sheet does not require an attorney's skill, courts regularly either deduct or reduce to a paralegal rate attorney time spent on this task"). The Court has already removed .2 hours from these entries on the ground that Thompson billed for administrative tasks, *see supra*. The Court removes .8 additional hours because Hampton has not met her burden to demonstrate that Thompson's fees relating to the complaint are reasonable, particularly in light of Midland's evidence that the work done in Hampton's case was duplicative of work done in other suits Thompson has filed. *See, e.g.*, Doc 27-1 (similar complaints filed pursuant to the FDCPA and state statutes, including one wherein Thompson inadvertently left Hampton's name in another plaintiff's complaint); *see also Paz*, 2018 WL 4520221, at *3 (reducing hours billed to drafting complaint because "the work done . . . [was] duplicative of a number of similar FDCPA cases . . . Thompson filed against [defendant] on behalf other plaintiffs").

Finally, Midland challenges the hours of work Thompson completed after Hampton accepted its offer of judgment, arguing that Hampton can only recover fees incurred at the time she accepted its offer. The offer of judgement offered "$1,001.00, plus reasonable attorneys' fees, litigation expenses, and costs of suit incurred by Hampton." Doc. 20-1 ¶ 1. Midland argues that the past tense inclusion of "incurred" indicates that the offer only allows Hampton to recover fees accrued at the time of the offer. The Court disagrees. When necessary, "courts use contract principles to interpret offers of judgment." *Webb v. James*, 147 F.3d 617, 620 (7th Cir. 1998). "Ambiguity in an offer of judgment is to be construed against the defendant that makes the offer; a 'plaintiff should not be left in the position of guessing what a court will later hold the offer means.'" *Harbor Motor Co. v. Arnell Chevrolet-Geo, Inc.*, 265 F.3d 638, 647–48 (7th Cir. 2001) (quoting *Webb*, 147 F.3d at 623). Here, despite Midland's argument, the offer of judgment does not clearly or specifically state that Hampton can only seek fees for her attorney's work done

through the time of the offer of judgment. *Cf. Cavada v. City of Chicago*, No. 13 CV 1916, 2014 WL 4124273, at *5 (N.D. Ill. Aug. 18, 2014) (finding offer of judgment unambiguous because it used specific and clear language to limit recovery of fees and costs by offering "*reasonable attorney's fees and costs accrued to the date of this offer* in an amount to be determined by the Court"); *Morjal v. City of Chicago*, 774 F.3d 419, 420 (7th Cir. 2014) ("Defendants offer to allow judgment to be taken against them . . . in the total amount of . . . [$10,001.00] . . . plus *reasonable attorney's fees and costs accrued to date* in an amount to be determined by the Court." (emphasis added)). Hampton's offer of judgment provides that she is entitled to all fees, expenses, and costs incurred; it does not impose a time limit. To the extent Midland intended the offer of judgment to hold another meaning, the Court construes Midland's poor drafting against Midland. *See Harbor Motor Co.*, 256 F.3d at 647–48. Therefore, the Court does not discard time entries from after the offer of judgment, and considers 15.5 hours billed—accounting for time reduced *supra*—in calculating the lodestar.

## III.    Adjustments to the Lodestar

Although a strong presumption of the lodestar's reasonableness exists, the Court may adjust the lodestar in light of the degree of success, the novelty and difficulty of the issues, awards in similar cases, and the relationship between the lodestar amount and the damages awarded. *Hensley*, 461 U.S. at 430 n.3, 434; *Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007). The Court has already accounted for the fact that this case involved relatively straightforward issues, with which Hampton's counsel has much experience, in assessing the reasonableness of Thompson's hourly rate and the hours expended on this case. Midland asks the Court to further reduce Hampton's award of attorneys' fees, contending they are excessive as compared to her awarded damages.

The Seventh Circuit has "warned district courts against applying such a mechanical proportionality analysis." *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 687 (7th Cir. 2022); *see also Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999) ("[T]his Court has repeatedly rejected the contention that a district court should look to the percentage of the plaintiff's initial demand actually recovered through settlement or judgment and then mechanically reduce the attorney's fee award by a proportionate amount."). Hampton secured the maximum amount of statutory damages and "[t]he minor nature of the violation or the limited damages recovered should not [be] major barriers to [Hampton] receiving a reasonable attorney fee." *Cooper*, 42 F.4th at 687 (noting that "Congress's goal of using attorney fee awards as an incentive for plaintiffs to bring actions enforcing the rights of the public, like those under the FDCPA, is greatly undermined if courts apply a strict proportionality analysis"). Therefore, the Court will not reduce Hampton's attorneys' fee award based upon any argued disproportionality to her damages award. *See Kasalo v. Trident Asset Mgmt., LLC*, No. 12 C 2900, 2015 WL 2097605, at *5 (N.D. Ill. May 3, 2015) (approving fee award of over $115,000 in FDCPA case with $1,000 recovery); *Levine v. Creditors' Prot. Serv., Inc.*, No. 17 CV 2537, 2019 WL 7758685, at *6 (N.D. Ill. Dec. 10, 2019) (declining to adjust plaintiff's FDCPA attorneys' fee award of $38,599, despite the "disparity" between the $1,000 in damages), *report and recommendation adopted*, No. 1:17-CV-02537, 2020 WL 439544 (N.D. Ill. Jan. 7, 2020).

Therefore, the Court awards Hampton $5,485.76 in attorneys' fees and $364.75 in costs.

Date: November 15, 2022                    /s/ Sara L. Ellis_____